IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00625-D

**Roxanne Louise Knickrehm,**

Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of
Social Security,

Defendant.

**Memorandum & Recommendation**

Plaintiff Roxanne Knickrehm instituted this action on December 1, 2015, to challenge the denial of her application for social security income. Knickrehm claims that the Administrative Law Judge ("ALJ") Wanda L Wright erred in evaluating her impairments under the Listings of Impairments, finding that Knickrehm has the residual functional capacity ("RFC") to perform a reduced range of light work, and failing to properly evaluate the opinion evidence. Both Knickrehm and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 16, 18.

After reviewing the parties' arguments, the court has determined that ALJ Wright reached the appropriate decision. There is substantial evidence to support the ALJ Wright's consideration of Knickrehm's impairments under the Listings, the weight afforded to the medical opinion evidence, and her determination that Knickrehm has the RFC to perform light work. Therefore, the undersigned magistrate judge recommends that the court deny Knickrehm's motion, grant Colvin's motion, and affirm the Commissioner's decision.[1]

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

## I. Background

On February 13, 2012, Knickrehm protectively filed an application for disability insurance benefits alleging a disability that began on October 31, 2011. After her claim was denied at the initial level and upon reconsideration, Knickrehm appeared at a hearing before ALJ Wright on December 4, 2013, to determine whether she was entitled to benefits. ALJ Wright determined determined Knickrehm was not entitled to benefits because she was not disabled. Tr. at 20–33.

ALJ Wright found that Knickrehm had the following severe impairments: posttraumatic stress disorder ("PTSD"); somatization disorder; obsessive compulsive disorder ("OCD"); generalized anxiety disorder ("GAD"); orthostatic hypotension; irritable bowel syndrome ("IBS"); arthralgias; migraines; and syncope. *Id*. at 22. ALJ Wright found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Wright then determined that Knickrehm had the RFC to perform a light work with the following limitations: she can never climb ladders, ropes, or scaffolds; she must avoid even moderate exposure to pulmonary irritants such as fumes, dusts, gases, and poorly ventilated areas; she must avoid even moderate exposure to chemicals, moving machinery, hazardous machinery, and unprotected heights; she is limited to performing simple, routine, repetitive tasks in a low stress job, meaning a job that has only occasional decision-making and occasional changes in the work setting; and she can occasionally interact with coworkers and supervisors but she cannot interact with the general public. *Id*. at 24. ALJ Wright concluded that Knickrehm was unable to perform any past relevant work but that, considering her age, education, work experience, and RFC, there were jobs that existed in the national economy that she was capable of performing. *Id*. at 32.

These include: mail clerk, bench assembler, and shipping receiver weigher. *Id*. Thus, ALJ Wright found that Knickrehm was not disabled. *Id*. at 33.

After unsuccessfully seeking review by the Appeals Council, Knickrehm commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on December 1, 2015. D.E. 1.

## II.    Analysis

### A.    Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.    Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is

equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C.     Medical Background

The medical evidence during the relevant period from October 31, 2011, Knickrehm's alleged onset date, through July 16, 2014, the date of ALJ Wright's decision, reveals the following: Knickrehm has a history of PTSD, somatization disorder, OCD, generalized anxiety disorder, orthostatic hypotension, IBS, arthralgias, migraine headaches, and syncope. Tr. at 22. Imaging studies performed by the Department of Veterans Affairs in October 2011 showed foraminal narrowing at L5-S1 and apex left scoliosis measuring 4.1 degrees. *Id*. at 812. A lumbar spine imaging study performed at that time demonstrated exaggerated lordosis of the lumbosacral spine. *Id*. at 810–11. In March 2012, Knickrehm sought care at the VA for oxygen therapy, and providers prescribed both portable and stationary oxygen. *Id*. at 871.

Knickrehm experienced three syncope episodes between August 2011 and November 2011. *Id*. at 897. On November 4, 2011, she reported that she was doing well overall, had increased her exercise, and denied dyspnea, coughing, or wheezing. *Id*. Examination revealed no tenderness on palpitation, normal gait, normal affect, and euthymic mood. *Id*. at 898. On November 21, 2011, Dr. Theresa R. White prescribed a walker due to Knickrehm's coccydynia and syncope. *Id*. at 1023.

Knickrehm's treatment notes from November 21, 2011, reflect that she was pleasant and cooperative with euthymic mood and full and appropriate affect. *Id*. at 1377. On February 20, 2012, her mood was depressed and anxious with restricted affect. *Id*. at 1376. She reported pain on March 2, 2012, but treatment notes reflect a negative depression screen. *Id*. at 1105. Records note a depressed mood on March 5, 2012, but on April 2, 2012, her mood was less depressed. *Id*. at 1102, 1374.

Dr. Alan Cohen performed a consultative examination on June 6, 2012. *Id*. at 1030–33. Knickrehm denied fatigue, weakness, syncope, and parasthesias but reported joint pain, memory loss, anxiety, and depression. *Id*. at 1031–32. Her mood and affect were flat and she had a steady gait and normal station. *Id*. at 1032. Dr. Cohen concluded Knickrehm did not require a walker to ambulate and that she could sit, stand, walk, carry, and lift without impairment. *Id*. at 1033.

On June 19, 2012, Knickrehm reported minimal pain and she had a euthymic mood and normal affect. *Id*. at 1082–83. In August, she denied dizziness, memory lapses, and lightheadedness, she had normal gait and station, and her mood was euthymic with normal affect. *Id*. at 1043. Treatment notes from December 2012 reflect that Knickrehm's mood was less depressed, she had full and appropriate affect, her pain level was 3 out of 10, and she denied feeling tired. *Id.* at 1142–43, 1321.

Knickrehm sought treatment with Dr. Allen D. Mumper at Carolina Psychological Associates from 2012 to 2013 for her irritability, anger, depression, OCD, and anxiety. *Id.* at 1194–1200, 1307–1323. On February 14, 2013, Dr. Mumper completed a Psychiatric Technique Review Form ("PRTF"). *Id*. at 1201–13. In the PRTF, Dr. Mumper opined that Knickrehm had

moderate to marked restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *Id*. at 1211.

Knickrehm reported a pain level of 5 out of 10 on March 5, 2013. *Id*. at 1283. Her depression screen was negative, and she had normal balance and gait. *Id*. at 1283–84. The following day, Knickrehm reported a pain level of 6 out of 10, and records also note euthymic mood and normal affect with an unsteady gait. *Id*. at 1277, 1279. The following month, Knickrehm had normal behavior, depressed mood, and restricted affect.

An April 2013 CT scan on Knickrehm's head was normal. *Id*. at 1260. She presented to the ER on April 19, 2013, reporting lightheadedness and passing out. *Id*. at 1252. She reported a pain level of 3 out of 10 and lightheadedness but no dizziness. *Id*. at 1253. As her balance, gait and station were normal, and she did not have any cerebellum or coordination abnormalities, Knickrehm was released without restrictions. *Id*. at 1253–54.

Additional treatment notes reflect that Knickrehm: was tearful and depressed with restricted affect in June 2013 (*id*. at 1314); reported a pain level of 5 out of 10 with normal gait and euthymic mood and normal affect in July 2013 (*id*. at 1242–43); was less depressed with full an appropriate affect and steady gait in August 2013 (*id*. at 1310); and had euthymic mood, normal affect, normal gait, and intact recent and remote memory in September 2013 (*id*. at 1217, 1342).

### D.    Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders)

Knickrehm first argues that ALJ Wright erred in failing to find that her impairments satisfy the criteria for Listings 12.04 and/or 12.06. The Commissioner maintains that the evidentiary record supports the ALJ Wright's finding. The court concludes that ALJ Wright

properly found that Knickrehm's impairments did not satisfy the requisite criteria of these Listings.

### 1.      Overview of Listing of Impairments

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. 20 C.F.R. § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C.

Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ is not required to explicitly identify and discuss every possible listing that may apply to a particular claimant. Instead, the ALJ must provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador v. Colvin*, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id.*

### 2. Listings 12.04 and 12.06

ALJ Wright found that Knickrehm's impairments did not meet or medically equal Listing 12.04 "Affective Disorders" or Listing 12.06 "Anxiety Related Disorders." Tr. at 22–24. More specifically, ALJ Wright found that Knickrehm did not meet the paragraph "B" criteria or the Paragraph C criteria of either Listing. *Id.* A claimant meets or medically equals Listing 12.04 or Listing 12.06 if he exhibits the criteria in Paragraph A and Paragraph B, or the criteria in Paragraph C. 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04, 12.06.

### a.      Paragraph B Criteria

The Paragraph B criteria for Listing 12.04 and Listing 12.06 are the same: the claimant must have at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social function; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* Episodes of decompensation "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* § 12.00(C)(4). They may also "be inferred from the medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system …; or other relevant information … about the existence, severity, and duration of the episode." *Id.* An episode of decompensation is of extended duration when it lasts for at least two weeks. *Id.* In this context, "repeated episodes" has been interpreted as occurring three times a year, or an average of once every four months. *Id.*

Here, Knickrehm argues that she has a documented history of PTSD, somatization disorder, generalized anxiety disorder, OCD, and depression for which she has been treated since 2000. She further asserts that she relies on her husband to perform most household chores and, on most days, she stays in bed. Knickrehm points to the PRTF completed by Dr. Mumper in February 2013 to demonstrate she meets the Paragraph B criteria. As noted above, Dr. Mumper found that Knickrehm's impairments caused moderate to marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.

In considering Dr. Mumper's records, ALJ Wright afforded minimal weight to his assessment. *Id.* at 27–28. She noted that his findings were inconsistent with the evidence of record which demonstrated generally unremarkable mental status examinations and conservative

treatment. *Id.* at 28. ALJ Wright also observed that Dr. Mumper's findings were inconsistent with the testimony of both Knickrehm and her husband who stated that her primary impairments were physical, not mental, in nature. *Id.* For these reasons, ALJ Wright declined to adopt Dr. Mumper's findings.

ALJ Wright further noted that Knickrehm performed some chores and prepared simple meals, shopped, and cared for a pet. *Id.* at 23. ALJ Wright also remarked that Knickrehm had problems getting along with others but telephoned and texted some individuals. She also pointed out that Knickrehm had difficulty paying attention, completing tasks, and following instructions. *Id.* Substantial evidence supports ALJ Wright's finding that Knickrehm had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and that she experienced no episodes of decompensation. *Id.* Accordingly, ALJ Wright determined that the Paragraph B criteria had not been met. *Id.*

### b.     Paragraph C Criteria

Although Listings 12.04 and 12.06 have the same Paragraph B criteria, they have different Paragraph C criteria. In order to meet the Paragraph C criteria for Listing 12.04, the claimant must have a "[m]edically documented history of a chronic affective disorder of at least [two] years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," along with either (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an

arrangement. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. In order to meet the Paragraph C criteria for Listing 12.06, the claimant must be completely unable to function independently outside of his home. *Id.* § 12.06.

ALJ Wright found that Knickrehm did not meet the Paragraph C criteria. Tr. at 24. Dr. Mumper opined that Knickrehm would be unable to function outside of a highly supportive living arrangement. ALJ Wright found, however, that the objective medical evidence did not show that Knickrehm had a complete inability to function independently outside of her home or a current history of one year or more demonstrating an inability to function outside of a highly supportive living arrangement. *Id.* at 24. ALJ Wright observed that Knickrehm was able to care for her husband and children, attended to her own personal hygiene with some assistance, prepared meals and performed chores, at times with help from her children, shopped, read, and watched television. *Id.* Accordingly, there is substantial evidence to support ALJ Wright's finding that Knickrehm did not meet the Paragraph C criteria. *Id.*

Given this evidence, ALJ Wright did not err when she concluded that Knickrehm did not meet or medically equal Listing 12.04 and Listing 12.06.

### E.    RFC

Knickrehm next contends that the evidence does not support ALJ Wright's finding that she is capable of performing a reduced range of light work. The Commissioner maintains, and the court agrees, that there is substantial evidence to support this determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically

determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id*. §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id*. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Knickrehm contends that ALJ Wright erred in concluding that she was capable of performing light work[2] with additional limitations. She points to her diagnosed impairments as well as to an October 2011 imaging studies showing neural foraminal narrowing at L5-S1, apex left scoliosis measuring 4.1 degrees, and exaggerated lordosis of the lumbrosacral spine. Tr. at 810–12. At the hearing, Knickrehm testified that: she lost her previous job because she was unable to make it to work; she suffers from syncope some mornings, making her dizzy and causing her to fall; she must use a walker to help her balance; she has been to the hospital at least six times for her Postural Orthostatic Tachycardia Syndrome and syncope episodes; she is only able to perform simple chores such as preparing a sandwich; and she relies on her husband to do most things around the house. *Id*. at 44–64. She also stated that she stays in bed four to five days per week. *Id*. at 51. Her husband's testimony corroborated Knickrehm's statements. *Id*. at 66–71.

There is substantial evidence supporting ALJ Wright's finding that Knickrehm is capable of a reduced range of light work. First, state agency consultants opined that Knickrehm was

---

[2] Light work may involve lifting or carrying up to 10 pounds frequently and up to 20 pounds occasionally; standing or walking approximately six hours in an eight hour day; and sitting with pushing or pulling with arm-hand or leg-foot controls. 20 C.F.R. § 404.1567; SSR 83-10.

capable of such work. ALJ Wright's RFC determination incorporated additional limitations to the RFC assessed by state agency reviewers.

Dr. Huffman-Zechman found that Knickrehm could perform a reduced range of light work. *Id*. at 30. ALJ Wright gave limited weight to her assessment because although it was consistent with the medical evidence noting generally normal exams, it failed to adequately consider Knickrehm's complaints of pain and the combined effects of her impairments. *Id*. at 30.

Keith Bauer, Ph.D., found that Knickrehm was capable of understanding and recalling simple instructions, persisting at simple and routine tasks, relating adequately to others in the workplace, and adapting to most changes and task demands. *Id*. Similarly, Darolyn Hilts, Ph.D., concluded that Knickrehm could perform simple, routine, repetitive tasks in a low stress, limited social setting. *Id*. ALJ Wright gave limited weight to these assessments finding that they were consistent with the evidence of record but that their assessments were not sufficiently functional or diagnostic and did not describe Knickrehm's abilities and limitations for work-related activities. *Id*. at 30–31.

Additionally, ALJ Wright did not fully credit the testimony of Knickrehm and her husband about the severity of her symptoms. *Id*. at 28. Despite her claims of total disability, the medical evidence indicated generally unremarkable physical and mental examinations. *Id*. at 28–29. ALJ Wright also noted the conservative nature of her treatment. *Id*. at 29. Treatment notes reflected, for example, that Knickrehm had a normal lumbar spine; her allergies were benign; she denied vision problems; she did not require a walker to ambulate; and she planned to take a trip to Las Vegas. *Id.* at 29–30. Given the evidence, ALJ Wright found that Knickrehm's symptoms were not as severe as she alleged. *Id*. at 29. She concluded that an RFC for light work with

additional postural and environmental restrictions accommodated those limitations borne out by the objective medical evidence.

Because there is substantial evidence supporting ALJ Wright's determination that Knickrehm was capable of performing a reduced range of light work, her argument on this issue lacks merit.

### F. Medical opinion evidence

Knickrehm also argues that ALJ Wright erred in weighing the opinion evidence, including assessments offered by Dr. Mumper and by Daniel Knickrehm, her husband. The Commissioner posits that the opinion evidence was properly considered. The court finds that Knickrehm has not established error by ALJ Wright in her evaluation of the opinion evidence.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05–CV–46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96–6p, 1996 WL 374180, at *1 (July 2, 1996). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Generally, the more the medical source presents

relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 404.1527(c)(4).

According to 20 C.F.R. § 404.1527(c)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(d)(1).

When making a pain and credibility assessment, an ALJ "must consider the entire case record, including ... statements and other information provided by ... other persons about the symptoms and how they affect the individual." SSR 96–7p.[3] Other persons may include non-medical sources such as spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 404.1513(d). These lay witnesses "may provide [statements] about how the symptoms affect [a claimant's] activities of daily living and [her] ability to work...." 20 C.F.R. § 404.1529(a).

---

[3] Subsequent to the ALJ's decision, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Although there were no policy changes relevant herein, because SSR 96-7p was in effect at the time of ALJ Wright's decision, the undersigned will review the decision under SSR 96-7p. *See Keefer v. Colvin*, C/A No. 1:15-4738-SVH2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

### 1.      Dr. Mumper

As noted above, Dr. Mumper completed a PTRF on February 13, 2014. Tr. at 1201–14. He found that Knickrehm would have moderate to marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *Id*. at 1211.

Knickrehm contends that Dr. Mumper's assessment is deserving of more than the minimal weight ALJ Wright afforded it because Dr. Mumper has treated Knickrehm for several years and is in the best position to evaluate her ability to perform work-related activities. Knickrehm also takes exception with ALJ Wright's analysis, arguing that she failed to consider the § 404.1527(c) factors when weighing Dr. Mumper's findings.

In considering Dr. Mumper's records from Carolina Psychological Associates, Dr. Wright noted that Knickrehm had been treated by this provider from July 2012 through October 2013 for OCD, depression, somatization disorder, PTSD, and anxiety. Tr. at 27. In evaluating Dr. Mumper's opinion, ALJ Wright noted that Dr. Mumper's assessed limitations were inconsistent with Knickrehm's generally unremarkable mental status examinations, conservative treatment, and a lack of inpatient hospitalization or emergency treatment. *Id*. at 27–28. For this reason, ALJ Wright afforded minimal weight to Dr. Mumper's medical source statement. *Id*. at 28.

Although 20 C.F.R. § 404.1527(c) states that the treatment relationship and provider's specialty are two factors for an ALJ to consider in weighing medical opinions, he must also consider whether a medical opinion is consistent with the record as a whole. Having found that Dr. Mumper's opinion was inconsistent with the other evidence, ALJ Wright properly declined to afford it more weight. Finding that ALJ Wright properly considered and explained her evaluation of Dr. Mumper's opinion, there is no error on this issue.

### 2.    Daniel Knickrehm

Knickrehm asserts that an ALJ is required to consider third party statements from others, such as a spouse, as to a claimant's symptoms and their effect. She maintains that her husband's testimony that he helps her with various tasks and that her health problems preclude her from being a reliable employee are deserving of more weight.

Knickrehm's husband, Daniel Knickrehm, testified at the hearing before ALJ Wright. ALJ Wright gave his statement limited weight. *Id*. at 31. She found that he based his statement on personal observations, but that his testimony was not consistent with the medical evidence of record and did not support a finding that Knickrehm was unable to perform a reduced range of light work. *Id*.

ALJ Wright clearly considered Mr. Knickrehm's testimony in rendering her decision. She cited SSR 06-03p[4] and noted his specific statements in her decision. *Id*. at 25–26. She evaluated his statements in conjunction with the other evidence and concluded that they were not fully credible. *Id*. at 28, 31. ALJ Wright credited his observations about Knickrehm's moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. *Id*. at 31. However, ALJ Wright also remarked that Mr. Knickrehm's testimony that his wife was unable to perform a reduced range of light work was inconsistent with the medical evidence which showed generally unremarkable findings upon examination. *Id*. at 31. Accordingly, ALJ Wright afforded limited weight to Mr. Knickrehm's statements.

---

[4] This Ruling states that the ALJ "generally should explain the weight given to opinions from ... 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–3p (2006).

Given ALJ Wright's discussion of Mr. Knickrehm's testimony, it is clear that she considered his statements as required by the Regulations. *See* 20 C.F.R. §§ 404.1513(d), 404.1529(a). As Knickrehm has only show disagreement, nor error, with ALJ Wright's evaluation of this evidence, her argument on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

## III.    Conclusion

For the forgoing reasons, the court recommends that the court deny Knickrehm's Amended Motion for Judgment on the Pleadings (D.E. 16), grant Colvin's Motion for Judgment on the Pleadings (D.E. 18), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described**

above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated:  January 10, 2017

Robert T. Numbers, II
United States Magistrate Judge